## Fowler v. Pirris

---

*Theodore A. Schwartz,,* for plaintiff.
*Robert L. Ceisler,* for defendant, Washington Hospital.

BELL, *J.,* April 28, 1981—Defendant, Washington Hospital, has filed a motion for a protective order pursuant to Pa.R.C.P. 4012, on plaintiff's request for a production of documents. Plaintiff has also filed a cross motion for sanctions against the defendant hospital.

An extensive account of the pending case is not needed presently, and we will relate only those facts which will give a basic understanding of the type of case that is now being prepared for trial. On or about June 27, 1973, Phyliss G. Fowler, wife of plaintiff herein, entered the Washington Hospital for childbirth. In spite of her extreme hypertensive condition, the child was delivered on June 28, 1973; however, renal complications developed with Mrs. Fowler. On July 7, 1973, a decision was made to perform a closed renal biopsy to evaluate the etiology of her condition. Bleeding developed and on

July 26, 1973, a right nephrectomy was performed. Renal functions continued to deteriorate and Mrs. Fowler was put on hemodialysis. Subsequent complications necessitated the removal of her left kidney and, unfortunately, Mrs. Fowler died at home on December 2, 1974.

Clarence C. Fowler, as administrator of her estate, filed a complaint against Washington Hospital alleging, inter alia, that it had failed to have adequate and competent surgical experts render treatment and that it failed to monitor Mrs. Fowler's treatment. Defendant hospital denies the allegations.

In order to diligently prepare and prosecute this case, counsel for plaintiff has sought a number of documents relating to the professional expertise of Dr. Pirris by way of a motion for production. Dr. Pirris was the attending physician for Mrs. Fowler and was granted staff privileges at the Washington Hospital. The Washington Hospital has asked this court for a protective order objecting to the discovery of certain requested documents, claiming that they fall within the confidentiality provisions of the Pennsylvania Peer Review Protection Act (PPRPA)[1] which provides in section 425.4:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee . . . Provided, however, that information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they

1. Act of July 20, 1974, P.L. 564, 63 P.S. §425.1 et seq.

were presented during proceedings of such committee."

The act defines a "Review organization" as:

[A]ny committee . . . established by one or more state or local professional societies, to gather and review information relating to the care and treatment of patients for the purposes of (i) evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto."

It is noted by the court that the act permits discovery of documents considered by a review committee, if they are obtainable from original sources. As this is so, the request found in paragraph two of plaintiff's motion (i.e. — the accreditation reports of Washington Hospital from the Joint Commission of Hospital Accreditation) shall be permitted as plaintiff can obtain the report from the Joint Commission itself. Counsel for defendant has questioned whether plaintiff would be able to obtain the documents from the Joint Commission. Plaintiff's request might be denied by the Commission; however, defense counsel has offered nothing, other than his own personal doubt, to show that plaintiff is not entitled to a copy of the report. As such, we see no reason to believe that the document is unavailable from an original soure. We therefore allow its discovery from the defendant hospital.

The other requested documents, not being available through an independent source, present us with a different problem. The defendant claims that since the PPRPA prohibits discovery of the proceed-

ings and records of any "hospital board, committee or individual reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto," it should not be forced to comply with plaintiff's requests. The requested documents, in addition to the accreditation report discussed above, are:[2]

"3 (B) A copy of the application of defendant Pirris to the governing board of Washington Hospital for staff privileges and/or a copy of the application to perform closed kidney biopsies.

3 (C) Any documents in the possession of the medical staff and/or governing body of the defendant reflecting their investigation or Dr. Pirris's qualifications to perform clinical practice and/or closed kidney biopsies at Washington Hospital and a copy of the disposition of said governing body and/or medical staff . . .

5 ". . . copies of documents with regard to the admission application of defendant Pirris, any delineation and retention documents of the staff privileges of defendant Pirris, and documents to show how the medical staff applied aforesaid standards to the defendant Pirris, specifically with regard to delineations of staff privileges for closed kidney biopsy."

Admittedly, there is little case history surrounding the PPRPA. Both defendant and plaintiff contend that the cases of Bandes v. Klimowski, 3 D.&C.3d 11 (1977), Schwartz v. Tri-County Hospital, 74 D.&C.2d 52 (1975), and Holliday v. Klimowski, 75 D.&C.2d 408 (1976), support their respective positions.

In Bandes, supra, it was held that a hospital ad-

---

2. As numbered in plaintiff's request for production of documents.

ministrator need not be required to answer a question as to whether there had been any infraction of hospital rules by a certain doctor. Plaintiff herein has not made a request such as this in his motion, and we feel that defendant's reliance on this case is misplaced.

In Schwartz, supra, a request was made for defendant doctors to answer interrogatories regarding their appearance before a review board. Such a request was not made of Washington Hospital in the instant case, thereby making reliance upon Schwartz inappropriate also. The requests made in Holliday, supra, are similar to those made by plaintiff herein, but are not so identical as to warrant a strict application of that court's order to the issue before us.

We will discuss each request seriatim: Plaintiff has requested a copy of Dr. Pirris's application for staff privileges[3]; we hold that it is discoverable under our reading of the statute and as being in concert with Judge DiSalle's order in Holliday. Peer review is defined in the PPRPA as a review "of services ordered or performed by *other* professional health care providers."[4] The records of such reviews are kept confidential in order to improve the quality of care, reduce morbidity and mortality and to keep the cost of care within reasonable bounds. The application of Dr. Pirris is not a document that reviews the services of another health care provider. In fact, it does not review "services ordered" at all; it is a recital in the applicant's own words of what qualifications he believes he has that would entitle him to a staff position. Consequently, the application is not a

---

3. Plaintiff's request 3(B).
4. Peer Review Protection Act of July 20, 1974, P.L. 564, as amended, 63 P.S. §425.2.

peer review within the definitional section of the PPRPA.

Nor does the intent and purpose of the act seem to encompass 'applications', even though the word 'applications' is made part of the definition of 'Review Organization'. The confidentiality section[5] states that the records of a review committee are not to be introduced in any civil action "[that arises] out of the matters which are the subject of evaluation and review." Simply stated, the legislature wished to encourage frank review of services performed by other health care practitioners by preventing their discussions, opinions and recommendations from being introduced at any pending or subsequent civil action. The present action does not arise from the act of Dr. Pirris in filing his application, and this document is therefore discoverable.[6]

Plaintiff further requests documents reflecting the medical staff and/or governing body's review of the defendant doctors' qualifications for clinical practice and/or closed kidney biopsies and the disposition of said group or groups.[7] It is claimed by

---

5. 63 P.S. §425.4.

6. See, Robinson v. Magovern, 83 F.R.D. 79 (W.D.,Pa. 1979), an antitrust action brought by a doctor against Allegheny General Hospital for their denial to him of staff privileges. The Federal Court for the Western District of Pennsylvania held that although there was a powerful interest in confidentiality as embodied by the PPRPA, the act would not be applied to shield from discovery events surrounding the denial of staff privileges such as the application, documents relating to qualifications and reports of the various committees. The court reasoned that the need for relevant evidence outweighed the powerful interest in confidentiality. The court, however, did not make it clear if the specific Federal interest in seeking the truth in a Federal question case required disclosure despite the existence of the state law, or whether their interpretation of the act itself permitted discovery.

7. Plaintiff's request 3(C).

plaintiff that their request is analogous to paragraphs 2 and 3 of Judge DiSalle's order in Holliday. Paragraphs 2 and 3 of the Holliday order concerned the production of any recommendations by professional staff members relating to a doctor's application and the records relating to their consideration of the application and the recommendations that were received by them.

We will not offer our opinion as to whether the documents granted in Holliday fell under the aegis of the PPRPA. However, we will find that plaintiff's request in paragraph 3(C) of the motion now before us is not rotected by the PPRPA.

The theory of the case against Washington Hospital is that it was allegedly negligent in permitting unqualified medical practitioners to render treatment to Mrs. Fowler. In order to prove his case against the hospital, it is necessary for plaintiff's counsel to show how the hospital's review of staff applicants was negligent. And this can only be done when the standards that were applied and documents showing the manner of their application are furnished to him. As the title of this act indicates, the PPRPA is to provide "for the increased use of peer review groups by giving protection to individuals and data who report *to* any review group." (Emphasis supplied) It was not meant to insulate a hospital group from liability if that group in their negligent review of staff applications permitted one not fully qualified to administer expert medical services. As the documents requested in 3(C) also do not deal with the particular circumstances from which this civil action arises, we will permit discovery. The same rationale applies to the documents described in paragraph 5 of plaintiff's motion and

they also are to be made available to plaintiff.[8]

Plaintiff has also filed a cross motion for sanctions against the defendant for failure to comply with his requests for production. This court is reluctant to impose sanctions against counsel. At the argument before the court en banc, it appeared that both sides were able to settle their differences as to this matter and we are of the opinion that plaintiff's position is now moot.

## ORDER

And now, this April 28, 1981, we hereby deny defendant's motion for protective order, and order, for the reasons set forth in our opinion, that the items requested by counsel for plaintiff be made available to him.

It is further ordered that plaintiff's motion for sanctions be denied.

## DISSENT

SWEET, *P.J.*, April 28, 1981—I dissent and would grant the motion for the protective order. It seems to me that the memorandum of law supplied by defendants is valid and convincing. "It is clear from the [Peer Review Protection] Act itself and from the cases that have construed the act that the plaintiff in this action is seeking discovery of material that is privileged and is not subject to discovery."

In addition to the arguments advanced by counsel, I think that it is unwise as a matter of public pol-

---

8. The documents requested in paragraphs 3(C) and 5 of plaintiff's motion are to be made available to the plaintiff, provided that the documents do not reveal any minutes or discussions of the members of the medical staff and/or hospital committee.

icy to allow this kind of discovery against a respected physician in this community in the absence of a preliminary showing of outrageous conduct by him before having discovery on his fitness to function in his diplomate specialty.